**NATIONAL LABOR RELATIONS BOARD v. SCIENTIFIC NUTRITION CORPORATION (INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, A.F.L., et al. (Intervenors).**

No. 11,694.

United States Court of Appeals
Ninth Circuit

Feb. 24, 1950.

David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Marcel Mallet-Prevost, Attorney, NLRB, Washington, D. C., for petitioner.

J. Paul St. Sure and Edward H. Moore, Oakland, Cal., for respondent.

Tobriner & Lazarus, Mathew O. Tobriner and Stanley Neyhart, San Francisco, Cal., for intervenors.

Before MATHEWS, HEALY, and POPE, Circuit Judges.

HEALY, Circuit Judge.

This case is in certain aspects a companion case to N. L. R. B. v. C. W. Hume Co., 9 Cir., 180 F.2d 445, and N. L. R. B. v. Flotill Products, Inc., 9 Cir., 180 F.2d 441.

The respondent, Scientific Nutrition Corporation, carried on its cannery business under the name of its predecessor Capolino Packing Corporation, and will be referred to in this opinion as Capolino. In 1941 Capolino entered into a collective bargaining agreement with Cannery Workers Union Local 22382, a local affiliated directly with the American Federation of Labor. The union will be referred to as Local 22382. By the agreement mentioned the parties adopted the Master collective bargaining contract existing between the employers' association, known as California Processors & Growers, Inc., and the State Council of Cannery Unions as the representative of the various AFL cannery workers' unions in the area. Capolino was not itself a member of Processors & Growers, Inc., but was what is called an independent. In 1944 Capolino sold the plant to respondent. The latter, under the same management as before, maintained unchanged its predecessor's relations with Local 22382.

In May 1945, while the contract relationship between employer and union was in force and effect, the AFL transferred jurisdiction over Local 22382, together with other similar locals, to the Teamsters, an AFL international union. Dissatisfaction with the transfer developed among members of Local 22382, and some of them, including an employee named Gus Cedar, withdrew to form an independent union, affiliated with what was called the Cannery Workers Council. These seceders sought to have their new organization recognized by Capolino as the bargaining representative in lieu of the Teamsters. However, the executive council of the AFL insisted on the program; and to make sure that the assignment of jurisdiction to the Teamsters was properly carried out President Green of AFL, on May 10, 1945 appointed a trustee for Local 22382. We do not understand the Board to question that the Teamsters, by virtue of this authoritative assignment, effectually succeeded to the status and rights of Local 22382 and stood in the latter's shoes as bargaining representative of the employees.

On May 14, 1945 Capolino's manager called the employees together and informed them that the Teamsters were taking over the plant and that there was nothing the employees or Capolino could do other than go along and conform with the new dispensation. He further admonished them that if they did not join the Teamsters the latter would stop deliveries and bring about a cessation of the plant's operations, with resultant loss of employment. The employee Gus Cedar, one of the recalcitrants as above stated, was warned in the latter part of May by Capolino's plant superintendent that persistence in his refusal to join the Teamsters would necessarily cause him to be let out. Shortly afterwards on solicitation by two Teamster representatives Cedar refused to join up with the Teamsters and was told that he was fired and to report to the office for his time. When Cedar reported to Capolino's office he was given a termination notice stating that he was discharged because

of his refusal to join the AFL Teamsters union. Cedar's discharge under these circumstances became the basis of the later proceeding before the Board, terminating in an order which the court is here asked to enforce.

The Board found that no closed-shop contract existed between Capolino and Local 22382, hence Capolino's discharge of the employee Cedar was violative of § 8(1) and (3) of the Act, 29 U.S.C.A. § 158 (1, 3); and that Capolino's supervisory officials by their declarations and admonitions above described had rendered assistance to the Teamsters in violation of § 8(1) of the Act. Capolino was ordered to cease and desist from its unlawful conduct, and, affirmatively, to offer Cedar reinstatement with back pay.

In concluding that there existed between Capolino and the union no closed-shop agreement the Board appears to have looked entirely to the formal terms of the Master contract between the State Council of Cannery Unions and Processors & Growers, Inc. We are persuaded that this concentration on the terms of the writing led the Board to overlook or disregard material and uncontroverted evidence tending to show that Capolino and Local 22382 had long understood and administered their contract as requiring membership in the Local as a condition of employment. The testimony of Capolino's plant superintendent, McIsaacs, in charge of labor relations, is directly to the effect that with the exception of certain employees occupying a supervisory or other status not covered by the contract all employees, as McIsaacs understood the agreement, were required to maintain good standing in the union as a condition of employment. Nowhere in the record does it appear that this interpretation of the contract had at any time prior to May 1945 been questioned by anybody. Cedar himself, who had been a regular employee of Capolino for at least a year, testified as a Board witness that until May 18, 1945 all employees of Capolino were members in good standing of Local 22382, and that he did not know of any employee prior to that date who failed to maintain membership therein. Asked whether such maintenance of membership had not at all times prior to that date been treated as an absolute requirement, Cedar replied merely that he did not know.

 As noted in N. L. R. B. v. Flotill Products, Inc., supra, some of the independent canners adhering to the Master contract followed a practice of supplementing the agreement by adding other terms, including, in the case of Flotill at least, the addenda providing for a closed shop. On the present record it is not irrational to assume that an informal understanding of that sort had early been arrived at between Capolino and the Local. We gather that respondent's plant was a small one. At the time of the occurrence related above it appears to have had not more than 26 employees. In an operation so small, and where all employees are union members, an informal stipulation that union membership is a requisite of employment would seem to be a natural development of the relationship. The Act, it is to be remembered, does not require contracts between employer and the union to be in any particular form, or that they be reduced to writing. Compare Matter of United Fruit Co., 12 NLRB 404. If the practice here were the result only of a mutual interpretation of the formal written document, without more, the result would not be different. The Master agreement was not so clear on the point in question as to be susceptible of but one construction. It is of significance to note further that, upon the advent of the Teamsters, that union did not seek nor did Capolino suggest any formal agreement establishing a closed shop. Inferably, neither party conceived that course to be necessary. There is, in short, no adequate reason for questioning the good faith of the management in acting on its understanding that a closed or union shop was in effect. The essential findings of the Board that there was no agreement for such a shop, and that the contract was not understood and administered by the parties as requiring membership in the union, is not, on consideration of the whole record, supported by substantial evidence.

The order of the Board is set aside and its petition is dismissed.